### SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD v. DOUGLAS.

### No. 11545.

Court of Civil Appeals of Texas. Galveston.

June 17, 1943.

Rehearing Denied July 8, 1943.

Collins, Jackson, Snodgrass & Blanks, of San Angelo, for appellant.

Sedberry, Williams & Amacker and W. A. Johnson, all of San Angelo, for appellee.

CODY, Justice.

This is a suit by appellee against appellant to recover the benefits provided for total and permanent disability by a policy of insurance issued by appellant to appellee if the insured should furnish satisfactory proof "that he had become totally and permanently disabled by bodily injury or disease, so that he was, and would be permanently, continuously and wholly prevented thereby for life, from performing any work, or engaging in any business for compensation, gain or profit," but which benefits would not extend either beyond the maturity of the policy or the continuance of such disability.

Appellee alleged that he took out the insurance policy sued on March 18, 1929, and that he became totally and permanently disabled from pulmonary tuberculosis in April, 1930, and has continued to be so disabled ever since; that he duly furnished appellant with proof of such disability, and that appellant began to pay appellee the prescribed monthly benefits on January 18, 1931, and continued to make such monthly payments until April 18, 1940. And appellee sued to recover twenty monthly payments (of $50), which he alleged accrued respectively on February 18, 1941, and successively thereafter until September 18, 1942, and were not paid by appellant. Appellant answered by general denial, and expressly denied that appellee was totally and permanently disabled, or that he was disabled by bodily injury or disease from pursuing his occupation as a barber.

The jury in answer to special issues found that appellee was totally disabled by tuberculosis during the period of time from February 18, 1941, to September 18, 1942 (being the period for which appellee sought recovery); and that such total incapacity was permanent during such period. Upon such verdict the court rendered judgment against appellant and in favor of appellee for $1,000, interest and costs. This appeal is prosecuted from said judgment upon two points:

First: That the court erred in excluding the testimony that after appellee had been discharged from the hospital he had acquired a farm in Mitchell County and had made a down payment of $1,500, and thereafter reduced the indebtedness thereagainst, and made extensive improvements thereon.

Second: The appellee having failed to allege and prove that his alleged disability did not come within the exceptions, limitations, and exclusions from liability on the part of appellant, as provided in the policy of insurance sued on, the court erred in rendering judgment for appellee.

We will discuss appellant's second point first. The rule of decision on the second point before the adoption of the New Rules of Civil Procedure was that an insured must plead and prove "that his claim for disability does not come within any of the exceptions, limitations, or exclusions of liability, which are provided for in the contract" of insurance. United Benefit Life Ins. Co. v. Zwan, Tex.Civ. App., 143 S.W.2d 977; International Travelers Ass'n v. Marshall, 131 Tex. 258, 114 S.W.2d 851. But the relative part of Rule 94 of the new rules, Texas Rules of Civil Procedure, reads: "Where the suit is on an insurance contract which insures against certain general hazards, but contains other provisions limiting such general liability, the party suing on such contract shall never be required to allege that the loss

was not due to a risk or cause coming within any of the exceptions specified in the contract, nor shall the insurer be allowed to raise such issues unless it shall specifically allege that the loss was due to a risk or cause coming within a particular exception to the general liability; * * *". The purpose and effect of Rule 94 was to change the aforesaid rule of decision theretofore enforced by the courts to the extent specified in Rule 94. Appellee filed his petition after the effective date of aforesaid rule. It was therefore no longer necessary for him to negative in his pleadings that his claim for disability does not come within any of the exceptions, limitations or exclusions of liability provided for in the contract, and appellant's second point is without merit and is overruled.

Turning now to appellant's first point, which complains of the exclusion of evidence; it appears from appellant's bill of exception No. 1, that while appellee was testifying on cross-examination, he testified in answer to appellant's questions that he owned a farm in Mitchell County, consisting of 328 acres, which he had acquired in February, 1940, and that at the time appellee left the hospital he owned no real estate; that he had acquired enough money to make the down payment on the purchase of the farm, and that he still owed money on it. The following then took place:

"Q. How much do you owe on the place?

"Court: I don't see that has anything to do with the case.

"Mr. Blanks: I want a full bill on it.

"Court: I don't see that is pertinent to the case.

"Mr. Blanks: I want a full bill on it.

"Court: You may have your full bill."

It further appears from the bill that had appellant's counsel been permitted to, he would have proved by appellee's testimony that he, appellee, had made a down payment of $1,500 on the purchase of the farm, and that an indebtedness remained against it of $1,500, and that he had made extensive improvements thereon. It does not appear from the bill of exceptions the purpose for which the evidence was offered. While it is manifest that appellee had testified he had been incapac-

itated to work for years, it does not appear from the bill that appellee did not acquire the money before he became incapacitated. Furthermore, while there is no more honorable source from which to acquire money than work, it is not the only source; it may be acquired by borrowing or as a gift or by inheritance, or even from a source less honorable, such as gambling. In a word, we think that the inference which appellant possibly may have wished the jury to draw from the fact that appellee made a cash payment of $1,500 on the purchase of a farm in 1940, namely, that the possession of such sum of money with which to make such payment contradicted his testimony that he was unable to work was one that was too remote. The issue to be determined was whether appellee was suffering from a loss of capacity to work during the term sued for, and not whether he had any income during the period of incapacity. "A policy requiring payment for total disability ordinarily is not one of indemnity against loss of income but against loss of capacity to work. 6 Cooley's Briefs on Insurance, 2 Ed., 5536. 'Total disability' is necessarily a relative matter, and must depend chiefly on the peculiar circumstances of each case and on the nature of the occupation or employment and the capabilities of the person injured. It does not mean absolute physical disability of the insured to transact any kind of business pertaining to his occupation, but exists if he is unable to do any substantial portion of the work connected therewith. Id. 5539." Quoted in Jefferson Standard Life Ins. Co. v. Curfman, Tex.Civ.App., 127 S.W.2d 567, 571, from Great Southern Life Ins. Co. v. Johnson, Tex.Com.App., 25 S.W.2d 1093, opinion adopted by Supreme Court. It would unduly prolong trials to go into a matter so remote, especially where there was such an abundance of evidence bearing on the question of appellee's capacity to work. Appellant has cited no authority for the admission of such testimony. Appellee's testimony was that a brother-in-law did all the work on the farm. We overrule appellant's first point.

There being no reversible error shown, the judgment of the trial court should be affirmed, and it is so ordered.

Affirmed.